# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW MAKOWSKI,

Plaintiff-Appellant,

v

GOVERNOR and SECRETARY OF STATE,

Defendants-Appellees.

UNPUBLISHED
August 18, 2016

No. 327396
Court of Claims
LC No. 14-000260-MP

Before: RIORDAN, P.J., and SAAD and M. J. KELLY, JJ.

PER CURIAM.

In this dispute over the denial of parole after having his sentence commuted, plaintiff, Matthew Makowski, appeals the opinion and order of the Court of Claims denying his request that it retain jurisdiction after our Supreme Court's decision remanding Makowski to the parole board's jurisdiction, see *Makowski v Governor*, 495 Mich 465; 852 NW2d 61 (2014), as amended on reh'g 497 Mich 862 (2014), and the parole board's decision to deny him parole. On appeal, Makowski argues—on various grounds—that the board had no authority to deny him parole and the Court of Claims should have retained jurisdiction to ensure that the board paroled him as it was required to do. We conclude that the commutation reduced the severity of Makowski's sentence by making him immediately eligible for parole, but did not mandate parole. Because the board had jurisdiction over Makowski and had the discretion to consider whether he was an appropriate candidate for parole, the Court of Claims correctly determined that there were no grounds for retaining jurisdiction to supervise the board's decision-making process. Consequently, we affirm.

## I. BASIC FACTS

The circuit court sentenced Makowski to serve life in prison without the possibility of parole after a jury found him guilty of first-degree murder in 1988. *Id.* at 468. In 2010, the board considered Makowski's application for commutation of his sentence and sent the application to the Governor with a favorable recommendation. *Id.* at 468-469. The Governor signed the commutation. It was then signed by the Secretary of State who affixed the Great Seal. *Id.* at 469. After the family of the victim expressed opposition, the Governor revoked the commutation. *Id.* at 469-470.

-1-

Makowski sued the Governor and Secretary of State in 2011. He argued that the Governor lacked the authority to revoke his commutation once it was signed, sealed, and delivered. *Id.* at 470. The case eventually went to our Supreme Court and it determined that the Governor had validly commuted Makowski's sentence and lacked the authority to revoke the commutation once made. *Id.* at 485-490. Accordingly, it ordered the Department of Corrections to reinstate Makowski's sentence to "a parolable life sentence" and remanded him into the board's jurisdiction. See *Makowski*, 495 Mich at 490.

After our Supreme Court remanded the case, the board issued a decision in October 2014 expressing "no interest" in taking further action to parole Makowski. Makowski moved for clarification or rehearing of the Supreme Court's decision; he complained that the Department of Corrections used the final sentence of Court's decision to treat him as a person with a parolable life sentence instead of someone with a sentence commuted to a minimum term of years. He contended that the board already agreed to parole him when it sent the commutation recommendation to the Governor, and urged the Supreme Court to modify its opinion to restore him to exactly the status he would have had but for the Governor's wrongful attempt to revoke the commutation.

In lieu of granting the motion, the Supreme Court entered an order amending the last sentence of its opinion to read:

> Accordingly, we reverse the judgment of the Court of Appeals. Consistent with the undisputed language of plaintiff's commutation, we further order the Department of Corrections to reinstate plaintiff's sentence to a minimum term of years—equivalent to the amount of time served as of the date of the Michigan Parole and Commutation Board's decision to recommend that plaintiff's sentence be commuted—to a maximum of life, and remand plaintiff to the jurisdiction of the parole board. [*Makowski*, 497 Mich at 863, amending on reh'g 495 Mich at 490.]

Makowski then moved to have the trial court retain jurisdiction over the case because further remedial action might be needed. He explained that he had not been processed for parole even though all other prisoners granted a commutation were promptly released. Thereafter, the board again denied Makowski parole; it explained that Makowski minimized his responsibility for the crime and needed additional insight into his offense to assure that he did not pose a risk to the community. Makowski asserted that all the prisoners with mandatory life sentences granted a commutation during the Granholm administration were punctually processed for release, and that the import of the Supreme Court's decision was that he too should be treated exactly as those prisoners. He argued that the Supreme Court did not remand the matter to the board to consider anew whether he should be released, but rather did so to process him for release.

In October 2014, while the motion to retain jurisdiction was still pending, the case was transferred to the Court of Claims, which then heard the motion. The Court of Claims issued an opinion and order explaining that it considered the gravamen of Makowski's argument to be that the board violated a legal duty arising out of historical precedent and procedural implications rather than a statutory mandate. The court directed the parties to address whether the court properly understood the gravamen of the issue, and if it did, why the proper remedy was not to file a new action for habeas corpus or mandamus. The court further ordered the parties to

provide it with any legal authority pertaining to whether the board must parole a prisoner after the board recommends, and the governor grants, a commutation.

At a second hearing, Makowski maintained that the court should place him in the same position he would have been in had Governor Granholm not attempted to revoke his commutation. He characterized his commutation as effectively granting him parole, leaving the board with the ministerial duty to carry out the commutation. The Governor and Secretary of State argued that the commutation merely rendered Makowski eligible for parole.

In April 2015, the Court of Claims issued its opinion and order. It stated that Makowski had identified a "historical practice, but not an actual, obvious legal entitlement to an outright grant of parole." The court concluded that the law did not provide that a commutation entitled him to parole. It then examined the language used in the commutation and determined that it simply made Makowski eligible for parole, but not entitled to it. The court opined that, if Makowski, felt that the board had not properly exercised its discretion, his recourse was to file a new cause of action. The court did order that the board could not consider or use any documentation conveyed by Governor Granholm or her agents in connection with the former Governor's attempted revocation when considering Makowski for parole, but otherwise denied Makowski's requests for relief.

Makowski then appealed in this Court and applied to the Supreme Court for permission to bypass this Court. The Supreme Court denied the request. *Makowski v Governor*, 498 Mich 876; 868 NW2d 617 (2015).

## II. RIGHT TO IMMEDIATE PAROLE

### A. STANDARDS OF REVIEW

Makowski argues that the Court of Claims erred in various ways when it refused to grant his requested relief. This Court reviews de novo questions of constitutional law. *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). This Court also reviews de novo whether the trial court properly selected, interpreted, and applied the relevant statutes. *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013).

### B. ANALYSIS

Makowski argues that the board had no authority to deny him parole once the Governor commuted his sentence. Specifically, he maintains that the Governor's commutation entitled him to parole and the board's refusal to parole him contravened the Governor's exclusive authority to commute sentences.

Michigan's constitution grants the governor the power "to grant reprieves, commutations and pardons after convictions . . . upon such conditions and limitations as he may direct, subject to procedures and regulations prescribed by law." Const 1963, art 5, § 14. The power to commute a sentence does not alter the source or authority of the original sentence; only trial courts have the authority to issue a judgment of sentence. MCL 769.1(1). The Governor's power to commute, rather, is the power to alter or amend an existing sentence to one that is less severe. See *Kent Co Prosecutor v Kent Co Sheriff*, 425 Mich 718, 725; 391 NW2d 341 (1986)

(opinion by BOYLE, J.). Makowski, therefore, mischaracterizes his amended sentence when he refers to it as a "Governor-imposed sentence." In this case, the Governor exercised her authority to commute Makowski's sentence by altering it from a sentence of life in prison without the possibility of parole to one with a minimum term equal to the time served as of a certain date, and a maximum term of life in prison.[1] Although the Governor modified his sentence to a less severe sentence, Makowski's sentence remained the sentence of the circuit court. Further, as amended, Makowski's sentence was an indeterminate sentence whose minimum term he had already served; accordingly, the board had jurisdiction to consider him for parole. MCL 791.234(1) and (2).

The board's decision to deny parole even after the Governor's decision to commute Makowski's sentence also did not contravene the Governor's exclusive authority to commute sentences. In this case, it is evident that the Governor did not amend Makowski's sentence to one for time-served and did not explicitly order him to be paroled. The undisputed language of similar commutations does not order "release, or "parole," but instead indicates that the prisoner is eligible for parole. Because the Governor did not specifically provide for Makowski's release, but instead exercised her authority to alter his sentence to make him eligible for parole, the board's exercise of its discretion and adherence to the normal procedures for paroling a prisoner do not unconstitutionally interfere with the Governor's authority to commute a sentence. Had the Governor wanted to commute Makowski's sentence to include immediate parole, she could have done so in express terms.

We are also unpersuaded by Makowski's arguments concerning the Governor's decision to set the minimum sentence to the date of the board's recommendation; as Makowski notes, this date makes it possible for the board to rely on its prior proceedings leading to the recommendation for commutation as the grounds for paroling a prisoner whose sentence has been commuted, but it does not follow that setting that date amounts to an order removing the decision from the board's discretion. There is simply nothing within the language of the commutation that requires the board to parole Makowski. Likewise, although the board's members might have understood that a vote to recommend commutation amounts to a vote for parole, the recommendation is not in fact an order of parole. Consequently, the board was not—in effect—reconsidering a grant of parole under MCL 791.236(2) by refusing to parole him after his commutation.

The fact that the board had routinely paroled prisoners who had been given similarly commutations without further hearings also did not deprive the board of its discretion to deny parole. A prisoner has no constitutional or inherent right to have his or her sentence commuted or commuted in a particular way. See *Conn Bd of Pardons v Dumschat*, 452 US 458, 465; 101 S Ct 2460; 69 L Ed 158 (1981). And a convicted felon's expectation of clemency premised on a state agency's prior practices does not give rise to a constitutionally protected right to clemency:

---

[1] The original commutation was destroyed. However, the parties do not dispute that Makowski's commutation used identical language to the other commutations issued at the time. See *Makowski*, 495 Mich at 478 n 5.

A constitutional entitlement cannot "be created-as if by estoppel-merely because a wholly and expressly discretionary state privilege has been granted generously in the past." No matter how frequently a particular form of clemency has been granted, the statistical probabilities standing alone generate no constitutional protections; a contrary conclusion would trivialize the Constitution. . . . [*Id.* (citations omitted).]

Instead, any constitutional right must be grounded in state law: "The ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising clemency." *Id.* As the Court of Claims correctly recognized, Makowski has not identified any state law that entitled him to the grant of immediate parole after the Governor amended his sentence. Because he has not established a constitutional or statutory right to be treated exactly the same as every other prisoner whose sentence was commuted using the same language, he has not established grounds for the continued assertion of jurisdiction by the Court of Claims.[2]

The Court of Claims correctly determined that the board had jurisdiction over Makowski as a prisoner who completed the minimum sentence of his amended indeterminate sentence. MCL 791.234(1) and (2). It also did not err when it concluded that the board had the discretion to deny him parole.[3]

Affirmed.

/s/ Michael J. Riordan
/s/ Henry William Saad
/s/ Michael J. Kelly

---

[2] Because he only qualified for parole, Makowski's due process rights included only those rights normally attending consideration of parole. The commutation left Makowski a mere "potential parolee who remains in prison" with "no liberty to protect." *In re Parole of Haeger*, 294 Mich App 549, 575; 813 NW2d 313 (2011). "The mere hope that the benefit of parole will be obtained is too general and uncertain and, therefore, is not protected by due process." *Id.* (internal quotation marks and citation omitted). Therefore, we reject his claim that the Court of Claims erred by failing to further consider whether the board violated his right to due process.

[3] The question before our Supreme Court primarily involved whether the Governor could revoke a commutation. For that reason, whether the board had discretion to deny parole on further review was not properly before the parties until after the Supreme Court's remand. Given the procedural posture, we conclude that the Governor and Secretary of State timely and properly asserted the board's discretion as a defense to the continued exercise of jurisdiction.