*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN FARM BUREAU, MICHIGAN MILK PRODUCERS ASSOCIATION, MICHIGAN PORK PRODUCERS ASSOCIATION, MICHIGAN ALLIED POULTRY INDUSTRIES, DAIRY FARMERS OF AMERICA, SELECT MILK PRODUCERS, INC., MICHIGAN CATTLEMEN'S ASSOCIATION, SNIDER FARMS, LLC, doing business as AIRPORT VIEW TURKEYS, ALPINE PORK, LLC, ATE FARMS, LLC, BEBOW DAIRY FARM, INC., doing business as BEBOW DAIRY FARM, BENNETT FARMS LIVESTOCK, LLC, doing business as BENNET FARMS LIVESTOCK, BLEICH DAIRY, BROOK VIEW DAIRY, LLC, doing business as BROOK VIEW DAIRY, BURNS POULTRY FARMS, INC., CAR-MIN-VU FARMS, LLC, doing business as CAR-MIN-VU DAIRY, CARY DAIRY FARM, INC., CARY'S PIONEER FARM, INC., CENTERWOOD FARMS, LLC, CENTRAL MICHIGAN MILK PRODUCERS, LLC, doing business as CENTRAL MILK PRODUCTION, CLOVER FARMS, doing business as CLOVER FAMILY FARMS, CONTRACT FINISHERS, INC., COURTER FARMS EAST FEEDLOT, LLC, doing business as COURTER FARMS EAST, COURTER FARMS WEST FEEDLOT, LLC, doing business as COURTER FARMS WEST, CROSSROADS DAIRY, LLC, D & K FARMS, DEN DULK DAIRY FARM, LLC, DEYOUNG PORK, INC., doing business as DEYOUNG PORK, INC., PLAINWELL, DOUBLE QUAD FARMS, LLC, doing business as DOUBLE QUAD FARMS, DUTCH MEADOWS DAIRY, LLC, doing business as DUTCH MEADOWS DAIRY, DYKHUIS FARMS, INC., doing business as BASELINE FARM, EHINGER FARM, RIVERBEND FARM, SHAMROCK FARM, and VILLAGE CENTRAL SANDY RIDGE, EDGE

FOR PUBLICATION
September 15, 2022
9:10 a.m.

-1-

WOOD DAIRY, LLC, doing business as EDGE WOOD DAIRY, FAIRGROVE FARMS, INC., doing business as FAIRGROVE FARMS, GERNAAT FAMILY FARMS, GW DAIRY, LLC, HALBERT DAIRY, LLC, doing business as HALBERT DAIRY, DJN CATTLE FARMS, INC., doing business as HALLIWILL FARMS, HICKORY GABLES, INC., doing business as HICKORY GABLES, HIGH LEAN PORK, INC., doing business as HIGH LEAN PORK 3, HIGHLAND DAIRY, LLC, doing business as HIGHLAND DAIRY, GEERLINGS HILLSIDE FARMS, LLC, doing business as HILLSIDE FARMS-FENNVILLE, HILLSIDE FARMS-OVERISEL, and HILLSIDE FARMS-OVERISEL HOG BARNS, HARVEST HILL FARM, HASS FEEDLOT, LLC, doing business as HASS FEEDLOT HOME FARM and HASS FEEDLOT 2, HOLLOO FARMS, LLC, doing business as HOLLOO FARMS, HURON PORK, LLC, INGLESIDE FARMS, J&J RUSSCHER PROPERTIES, LLC, J AND A PORK, LLC, doing business as J AND A PORK, JMAX, LLC, doing business as JMAX DAIRY, KARNEMAATS, LLC, KOBER FARMS, LLC, KY-10 FARMS, LLC, doing business as KY-10 FARMS, LAIER FARMS, INC., doing business as LAIER FARMS, LUCKY 7 DAIRY, LLC, LUCKY 7 FARMS, LLC, MYERS FARMS, LLC, doing business as MYERS FARMS, NEW FLEVO DAIRY, INC., doing business as NEW FLEVO DAIRY, NOBIS FARMS, LLC, doing business as NOBIS DAIRY FARMS, NVF, INC., OOMEN BROTHERS, INC., doing business as OOMEN BROTHERS HOGS, PACKARD FARMS, LLC, doing business as PACKARD FARMS, PAYLA MEADOWS, LLC, PEACEFUL ROAD FARM, LLC, doing business as PEACEFUL ROAD FARMS, PERFORMANCE FARMS, LLC, PETRO FARMS, LLC, POLL FARMS, INC., PRAIRIE VIEW DAIRY, LLC, PRECISION PORK FARM, INC., doing business as PRECISION PORK FARM, PREFERRED HOG FARMS, INC., doing business as PREFERRED HOG 146th, THE PRESTON FARMS, LLC, doing business as PRESTON HOG FARMS, PRIDGEON FARMS, LLC, doing business as PRIDGEON FARMS, PSY FARMS, R & R PORK, LLC, doing business as R & R PORK,

RAPID RIDGE FARMS, LLC, doing business as RAPID RIDGE, RED ARROW DAIRY, LLC, doing business as RED ARROW DAIRY, RUGGLES BEEF FARMS, LLC, doing business as RUGGLES BEEF FARMS, S & T BARNS, LLC, doing business as S & T BARNS-BOOTH, S & T BARNS-FAWN RIVER, S & T BARNS-TSC, and S & T BARNS-HAENNI, SAND CREEK DAIRY, LLC, SCENIC VIEW DAIRY, LLC, doing business as SCENIC VIEW DAIRY, SCHURING SWINE, LLC, doing business as SCHURING FARMS, SCOTT MCKENZIE FARMS, SELDOM REST HOG FARM, LLC, doing business as SELDOM REST HOG FARM, SIDE STREET PORK, LLC, doing business as SIDE STREET PORK, SKINNER FARMS, LLC, doing business as SKINNER FARMS, STEENBLIK DAIRY, INC., STEWART FARMS, LLC, doing business as STEWART FARMS, STOREY FARMS, LLC, STOUGHTON CREEK FARMS, LLC, doing business as STOUGHTON CREEK FARMS, SWISSLANE DAIRY FARMS, INC., doing business as SWISSLANE FARMS, TERREHAVEN FARMS, INC., doing business as TERREHAVEN FARMS, VALLEY VIEW PORK, LLC, doing business as VALLEY VIEW PORK, VAN OEFFELEN FARM SERVICES, VANDERPLOEG HOLSTEINS, LLC, doing business as VANDERPLOEG HOLSTEINS, VDS FARMS, LLC, doing business as VDS FARMS-FULTON and VDS FARMS-S AVENUE, VELD FARMS, LLC, doing business as VELD FARMS, WALNUTDALE FARMS, INC., doing business as WALNUTDALE FARMS DORR TWP, WIL-LE-FARMS, INC., doing business as WIL-LE FARMS, WILLOW CREEK FARMS, WILLOW POINT DAIRY, LLC, doing business as WILLOW POINT DAIRY, WILSON CENTENNIAL FARM, LLC, BAKERLADS FARM, DEER CREEK POULTRY FARM, HARTLAND FARMS, INC., doing business as HARTLAND FARMS, HUDSON DAIRY, LLC, doing business as HUDSON DAIRY, MAYFLOWER DAIRY, LLC, MEADOW ROCK, LLC, doing business as MEADOW ROCK DAIRY, MEDINA DAIRY, LLC, doing business as MEDINA DAIRY, NOBEL FAMILY DAIRY, LLC, OTTAWA TURKEY FARM, doing business as

OTTAWA TURKEY FARM 112TH, and
CROCKERY CREEK TURKEY FARMS, LLC,
doing business as CROCKERY CREEK - 80TH,

      Plaintiffs-Appellants,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY,

      Defendant-Appellee.

No. 356088
Court of Claims
LC No. 20-000148-MZ

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

REDFORD, J.

Plaintiffs appeal as of right the Court of Claims opinion and order granting defendant, Michigan Department of Environment, Great Lakes, and Energy's (EGLE), motion for summary disposition and dismissal of plaintiffs' case for lack of jurisdiction because plaintiffs failed to follow the available administrative process to its completion. For the reasons stated in this opinion, we conclude the trial court achieved the correct result, albeit for different reasons, and we therefore affirm the order which granted EGLE's motion for summary disposition and dismissal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are several farmers associations and numerous livestock farms. The farms are regulated as concentrated animal feeding operations (CAFOs) under the federal Clean Water Act, 33 USC 1251 *et seq.* and state law pursuant to Part 31 (Water Resources Protection), MCL 324.3101 *et seq.*, of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.* CAFOs are lots or facilities where animals are confined and fed or maintained for 45 days or more in any 12-month period, 40 CFR 122.23(b)(1), which are regulated as point sources from which pollutants are or may be discharged. 33 USC 1362(14). Discharges from point sources are permissible pursuant to permits under the National Pollutant Discharge Elimination System (NPDES). 33 USC 1311(a); 33 USC 1342(a)(1). Michigan administers the NPDES within this state pursuant to the Clean Water Act and NREPA. With few exceptions, persons who discharge waste into the surface or groundwaters, or on the ground of this state, as a point source discharge, must apply for and obtain from EGLE a valid permit. Mich Admin Code R 323.2106; R 323.2109.[1]

---

[1] " 'Discharge' means any direct or indirect discharge of any waste, waste effluent, wastewater, pollutant, or any combination thereof into any of the waters of the state or upon the ground." Mich Admin Code, R 323.2102(n).

Mich Admin Code, R 323.2191(1), authorizes EGLE to issue a general permit if it determines that "certain discharges are appropriately and adequately controlled by a general permit." EGLE's issuance of general permits is subject to conditions set forth in the Administrative Code. Mich Admin Code, R 323.2192(2). Such permits have a fixed term of not more than five years but reissuance is permitted. Mich Admin Code, R 323.2150. CAFOs are point sources that require permits for discharges related to "all animals in confinement at the operation and all production area waste and CAFO process wastewater generated by those animals or the production of those animals, regardless of the type of animal." Mich Admin Code, R 323.2196(1)(a). CAFOs must apply for coverage under a general permit. Mich Admin Code R 323.2192(a). After receipt of an application, EGLE must determine whether the applicant meets the criteria for coverage under the general permit, and if so it issues a "notice of coverage." Mich Admin Code R 323.2192(b). Anyone "aggrieved by the coverage may file a sworn petition for a contested case hearing on the matter" with EGLE pursuant to the Administrative Procedures Act, MCL 24.201 *et seq*. MCL 324.3113(3); Mich Admin Code R 323.2192(c). A party may also challenge the validity or applicability of a rule by seeking a declaratory ruling under MCL 24.264.

The NPDES Wastewater Discharge General Permit issued by EGLE on March 27, 2020 (the 2020 general permit), gave rise to plaintiffs' dispute. Plaintiffs first petitioned for a contested case hearing under Mich Admin Code R 323.2192(c)[2] to appeal the 2020 general permit and the legality of certain new conditions imposed by the permit. Plaintiffs objected to EGLE's reduction of the limit on the amount of phosphorus that may be applied to land and the reduction of such limits for farms located within a Total Maximum Daily Load (TMDL) watershed. Plaintiffs also objected to the requirement that farms avoid applying waste within 100 feet of any surface water, open tile line intake structures, sinkholes, agriculture wellheads, or roadside ditches that are conduits to surface waters of the state. Plaintiffs further objected to EGLE's presumptive three-month ban on applying waste on land during winter months January through March and its ban on transferring waste to other entities that apply waste to land during those months.

Plaintiffs alleged that the added conditions banned the application of beneficial manure to fields and arbitrarily limited the amount of phosphorous in soil on which CAFO waste may be applied. Plaintiffs also took exception to EGLE's mandate that CAFOs and any farms that receive manure from CAFOs install permanent 35-foot vegetated buffer strips and prevent application of manure within 100 feet of every surface water, tile line intake, drain, and roadside ditch located on any land to which their manure is applied because doing so would severely limit land use for crop farming. Plaintiffs alleged that the added conditions exceeded EGLE's statutory authority and were contrary to state and federal law regulating CAFOs, lacked factual justification under the standard for setting conditions under Part 31 of NREPA, were arbitrary and capricious, and unconstitutional. Plaintiffs sought to have each of the challenged conditions struck from the 2020 general permit.

---

[2] As a result, EGLE did not issue any certificates of coverage under the 2020 general permit, and CAFOs that applied for such coverage had to comply with previous general permit certificates of coverage or individual permits.

Before a contested case hearing could be held, however, plaintiffs filed the present complaint for declaratory and injunctive relief in the Court of Claims, with the 2020 general permit the focus of the complaint. Plaintiffs made allegations similar to their contested case petition but asked the court to declare: (1) the conditions invalid because of EGLE's failure to follow the procedures required under the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, to promulgate the conditions as rules; (2) the conditions are substantively invalid rules because they were arbitrary and capricious, beyond EGLE's regulatory authority, and/or contrary to the intent of Part 31 of NREPA; (3) EGLE's incorporation of the conditions into the 2020 general permit a violation of plaintiffs' constitutionally guaranteed procedural and substantive due-process rights; (4) EGLE's adoption of such rules constituted a violation of the constitution's Separation of Powers Clause, and/or that any statutory authority relied on by EGLE for such adoption violated the constitutional nondelegation doctrine; (5) EGLE's assertion of control over non-CAFOs went beyond its statutory authority and that its standard for determining such authority was unconstitutionally void for vagueness; and (6) that the mandate to install 35-foot permanent vegetated buffer strips and requirement to have 100-foot setbacks converted cropland acreage to nonfarmable land, an unconstitutional taking without just compensation in violation of US Const, Am V, and Mich Const 1963, Art X, § 2.

EGLE moved for summary disposition under MCR 2.116(C)(4) (lack of subject-matter jurisdiction) and (C)(8) (failure to state a claim) on the ground that plaintiffs failed to exhaust available administrative remedies such that the Court of Claims lacked jurisdiction. EGLE asserted that the court would not have jurisdiction until EGLE made a final decision at the conclusion of the contested case proceeding, and only then would plaintiffs have exhausted all administrative remedies available to them rendering EGLE's final decision subject to judicial review pursuant to Const 1963, art 6, § 28 and MCL 24.301-MCL 24.306. Plaintiffs opposed EGLE's motion on the grounds that their complaint challenged "rules" that were not promulgated under the APA, and sought a declaratory judgment to determine the procedural validity of the "rules" under MCL 24.264 and MCR 2.605, which gave the Court of Claims jurisdiction. Plaintiffs maintained that exhaustion was unnecessary because plaintiffs challenged EGLE's authority to include the new conditions in the general permit, involving legal issues that did not require factual development and exempted the issues from the exhaustion requirement. Plaintiffs also argued that, if Part 31 is construed to grant EGLE authority to control farming practices, it would violate the Separation of Powers Clause. Plaintiffs argued that neither MCL 324.3103(1) nor MCL 324.3106 allowed EGLE to make general policy determinations that go "beyond existing state or federal regulations." EGLE replied that plaintiffs had to exhaust their administrative remedies before bringing this action and that they brought this case under MCL 24.264 and MCR 2.605, which apply to challenges to "rules." EGLE also argued that MCL 24.264 expressly required the exhaustion of administrative remedies before judicial review, and that the requirement in MCR 2.605 for an "actual controversy" could not be met because EGLE had not yet issued a ruling after a contested case hearing. EGLE conceded that no law specifically directed it to include specific conditions in CAFO permits but asserted that defending plaintiffs' separation of powers and nondelegation doctrine claim required fact-driven analysis and explanation of the standards and permit conditions it developed to fulfill its obligations under MCL 324.3101 *et seq.*, which requires it to develop permit conditions to assure compliance with state and federal standards, all of which were better suited to an administrative proceeding.

The Court of Claims concluded that it lacked subject-matter jurisdiction "[b]ecause plaintiffs did not follow the available administrative process to its completion." The court observed that plaintiffs had not exhausted their administrative remedies and their contested case remained pending, and consequently the court lacked jurisdiction requiring dismissal. The court disagreed with plaintiffs' contention that MCL 24.264 gave the court jurisdiction to determine the validity of the conditions by issuing a declaratory judgment because the 2020 general permit's conditions were not formally promulgated rules under the APA's procedures and "plaintiffs may not simply characterize the 2020 CAFO General Permit's requirements as 'rules' and thereby invoke MCL 24.264."

The court noted that MCR 2.605(A)(1) applies in a "case of actual controversy." The court held that no actual controversy existed for purposes of the court rule because the available administrative process had not yet run its course. Respecting plaintiffs' contention that their challenge to EGLE's authority to act made exhaustion unnecessary, the court found that the dispute did not implicate defendant's authority to regulate plaintiffs and did not excuse plaintiffs' failure to exhaust available administrative remedies. The court explained that plaintiffs' complaint raised factual issues that necessitated examination during the administrative process of the necessity and efficacy of certain matters within the permit which constituted fact intensive issues requiring development of a record that would enable comparing the statutory goals to the permitting conditions to determine whether the permitting conditions further those goals. The court concluded that development of a factual record is best suited for the administrative process. The court acknowledged that the assertion of constitutional questions can excuse a failure to exhaust available administrative remedies, but noted that "merely characterizing an issue by using constitutional terms does not excuse the exhaustion requirement, particularly where there remain factual issues for the agency to resolve." The court held that

> the presence of the factual issues noted above convinces the Court that the presence of plaintiffs' constitutional claims does not excuse exhaustion. In addition, it must be remembered that plaintiffs are alleging that they suffered constitutional violations as part of the permitting process. This permitting process has not yet run its course, meaning that the errors that have allegedly occurred have not been submitted to defendant for correction. Again, "[i]t is presumed that an administrative agency will correct its errors"—if any—"if given a chance to do so."

The court concluded that plaintiffs failed to exhaust administrative remedies and their contested case remained pending such that the court lacked jurisdiction requiring dismissal. This appeal followed.

## II. STANDARDS OF REVIEW

A motion for summary disposition under MCR 2.116(C)(4) tests the trial court's subject-matter jurisdiction. We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(4). *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 205; 631 NW2d 733 (2001). To the extent that resolution of this issue involves statutory interpretation, we review de novo whether the trial court properly interpreted and applied the relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). The primary goal of judicial interpretation is to ascertain and give effect to the Legislature's intent. *Mich Ed Ass'n v*

*Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011). We review de novo a court's interpretation of court rules under the same principles that govern the construction of statutes. *Dawley v Hall*, 501 Mich 166, 169; 905 NW2d 863 (2018). Questions of law are reviewed de novo. *Christenson v Secretary of State*, 336 Mich App 411, 417; 970 NW2d 417 (2021).

## III. ANALYSIS

### A. WATER RESOURCES PROTECTION

EGLE's authority to issue permits derives from state law, but exists in relation to the federal Clean Water Act (CWA), 33 USC 1251 *et seq*. Relevant to this case, the CWA requires that all point source discharges to regulated waters must have an NPDES permit. The CWA includes CAFOs in its definition of the term "point source" "from which pollutants are or may be discharged." 33 US 1362(14.) "Michigan promulgated its own administrative rules specific to the NPDES for CAFOs[.]" *Sierra Club Mackinac Chapter v Dep't of Environmental Quality*, 277 Mich App 531, 536; 747 NW2d 321 (2008). Mich Admin R 323.2196(1)(b) provides that "[a]ll CAFO owners or operators shall apply either for an individual NPDES permit, or a certificate of coverage under an NPDES general permit unless the owner or operator has received a determination from the department made after providing notice and opportunity for public comment, that the CAFO has 'no potential to discharge' . . . ." See also *Sierra Club*, 277 Mich App at 536-537.

### B. THE 2020 GENERAL PERMIT

Mich Admin Code, R 323.2191(1), authorizes EGLE to issue a general permit if it determines that "certain discharges are appropriately and adequately controlled by a general permit[.]" Under Mich Admin Code, R 323.2137, a permit issued by EGLE "shall contain terms and conditions deemed necessary by the department to ensure compliance with effluent standards and limitations" and may feature stringent limitations it deems necessary to meet applicable water quality standards.[3] A person who seeks to be covered by a general permit must apply for coverage under the permit. Mich Admin Code, R 323.2192(a). After EGLE receives an application for coverage under an existing general permit, it shall determine if the discharge meets the criteria for coverage under the general permit. Mich Admin Code, R 323.2192(b). A person is not covered under a general permit until after EGLE issues a notice of coverage stating that the discharge meets the criteria for coverage. *Id*.

### C. RESOLUTION OF DISPUTES REGARDING PERMITS

Plaintiffs argue that the court erred by ruling that it lacked jurisdiction because they contend that MCL 24.264 grants the court jurisdiction over declaratory judgment actions. We

---

[3] Other Part 21 rules permit EGLE to impose requirements under the terms and conditions of a state or national permit to achieve water quality compliance. See generally Mich Admin Code, Rules 323.2138; 323.2139; 323.2142; 323.2145; 323.2146; and 323.2149.

agree with this, however, plaintiffs in this matter failed to fulfill MCL 24.264's presuit requirement to first seek a declaratory ruling before commencing an action for declaratory judgment, which deprived the court of jurisdiction and required dismissal.

A person who is aggrieved by the coverage under a general permit may file a sworn petition for a contested case hearing on the matter with EGLE as provided under MCL 324.3113(3) and MCL 24.201 to MCL 24.328.[4] An interested person may also seek a declaratory ruling as to the applicability of a rule to an actual state of facts under MCL 24.263. The validity or applicability of a rule may be challenged by seeking a court's declaratory judgment under MCL 24.264 which provides:

> Unless an exclusive procedure or remedy is provided by a statute governing the agency, the validity or applicability of a rule, including the failure of an agency to accurately assess the impact of the rule on businesses, including small businesses, in its regulatory impact statement, may be determined in an action for declaratory judgment if the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The action shall be filed in the circuit court of the county where the plaintiff resides or has his or her principal place of business in this state or in the circuit court for Ingham county. The agency shall be made a party to the action. An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously. This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted.

MCL 24.264 reveals a general legislative intent to provide an avenue for a party to challenge an agency rule. *Slis v State*, 332 Mich App 312, 342; 956 NW2d 569 (2020).

In this case, plaintiffs filed a declaratory judgment action under MCL 24.264 regarding the validity of the new conditions imposed in the 2020 general permit on the ground that EGLE failed to follow the procedures to promulgate rules as required under the APA. Plaintiffs essentially contend that EGLE circumvented the rulemaking procedures by incorporating the new conditions in the 2020 general permit. EGLE moved for summary disposition on the ground that the Court of Claims lacked subject-matter jurisdiction because plaintiffs failed to exhaust their administrative remedies.

---

[4] See also Mich Admin Code, R 323.2192(c) which provides in relevant part that a "person who is aggrieved by the coverage may file a sworn petition for a contested case hearing on the matter with" EGLE in accordance with MCL 324.3113.

The Court of Claims relied on *Jones v Dep't of Corrections*, 185 Mich App 134, 460 NW2d 575 (1990)[5] for the proposition that only rules that have been formally promulgated as "rules" under the APA may be subject to a challenge under MCL 24.264. The court held that MCL 24.264 did not apply in this case because the conditions in the 2020 general permit were not formally promulgated as rules under the APA. We conclude that MCL 24.264 applied in this case.

In *Jones*, a case involving policy directives, institutional procedures, and employee guidelines of the Michigan Department of Corrections and the Michigan Civil Service Commission, the plaintiff requested a declaratory ruling from the defendants as to whether the directives, procedures, and guidelines were promulgated as rules pursuant to § 33 of the APA, MCL 24.233, and, if not, whether his discharge pursuant to unpromulgated rules deprived him of due process of law. *Id*. at 135-136. The defendants failed to respond to the plaintiff's request for a declaratory ruling and the plaintiff commenced the action for declaratory judgment under MCL 24.264. *Id*. at 136. The defendants moved for summary disposition and admitted that the directives, procedures, and guidelines were not promulgated as rules pursuant to § 33 of the APA. The defendants, however, contended that the circuit court lacked subject-matter jurisdiction because the plaintiff failed to exhaust his administrative remedies. The defendants also contended that the plaintiff was foreclosed from pursuing relief in the form of a declaratory judgment pursuant to MCL 24.264 because the plaintiff did not challenge the applicability of the directives, procedures, and guidelines. *Id*. The circuit court agreed with the defendants' rationale and granted the defendants' motion for summary disposition under MCR 2.116(C)(4) and (8). *Id*.

In addressing the plaintiff's contention that he was denied due process of law when discharged for violating directives, procedures, and guidelines, that were not promulgated as rules, the *Jones* court concluded that they could not be challenged under MCL 24.264 because they were not rules. The court further held that plaintiff failed to exhaust all available administrative remedies, precluding judicial review because he had available two additional levels of administrative relief. *Id*. at 137-138. We do not find the reasoning in *Jones* persuasive or applicable in this case.

Under the APA, the term "rule" is defined as follows:

> "Rule" means an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission of the law enforced or administered by the agency. [MCL 24.207.]

Among other things, the term "rule" does not include a "decision by an agency to exercise or not to exercise a permissive statutory power, although private rights or interests are affected." MCL 24.207(j). The APA contains standards for rulemaking. See MCL 24.231 through MCL 24.266.

---

[5] Cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), but they may be considered as persuasive authority. *Aroma Wines & Equip, Inc v Columbian Dist Servs, Inc*, 303 Mich App 441, 453 n 4; 844 NW2d 727 (2013). This Court decided *Jones* during May 1990. Therefore, it is not binding precedent.

To adopt a rule, an agency must fulfill among other things the APA's procedural requirements set forth in MCL 24.241, MCL 24.242, MCL 24.245, MCL 24.246, subject to the environmental rules review committee's oversight of all of EGLE's rulemaking under MCL 24.265 and MCL 24.266. " 'Processing of a rule' means the action required or authorized by this act regarding a rule that is to be promulgated, including the rule's adoption, and ending with the rule's promulgation." MCL 24.205(j). " 'Promulgation of a rule' means that step in the processing of a rule consisting of the filing of the rule with the secretary of state." MCL 24.205(k). A " guideline" by contrast "means an agency statement or declaration of policy that the agency intends to follow, that does not have the force or effect of law, and that binds the agency but does not bind any other person." MCL 24.203(7). Under MCL 24.226, an agency may not adopt a guideline in lieu of a rule.

Numerous administrative rules have been promulgated respecting water resource protection and water discharge permits pursuant to NREPA, MCL 324.3103, and MCL 324.3106. Relevant to this case, Mich Admin Code R 323.2196 governs CAFO permits and defines the scope of regulation specifying how and to what extent CAFOs and recipients handle, use, apply, dispose, and transport CAFO production area waste and CAFO process wastewater. Mich Admin Code R 323.2196(5) provides in relevant part:

> CAFO NPDES permits shall include all of the following:
>
> (a) A requirement to develop and implement a comprehensive nutrient management plan (CNMP). The CNMP shall be approved by a certified CNMP provider. At a minimum, a CNMP shall include best management practices and procedures necessary to implement applicable effluent limitations and technical standards established by the department including all of the following:
>
> * * *
>
> (*viii*) Conduct a field-by-field assessment of land application areas and address the form, source, amount, timing, rate, and method of application of nutrients to demonstrate that land application of production area waste or CAFO process wastewater is in accordance with field-specific nutrient management practices that ensures proper agricultural utilization of the nutrients in the production area waste or CAFO process wastewater. The assessment shall take into account field-specific conditions including locations of tile outlets, tile risers, and tile depth before land application to determine suitability of land application and to prevent discharge of any potential polluting material.
>
> (*ix*) Ensure proper land application by complying with all of the following conditions:
>
> (A) Production area waste and CAFO process wastewater shall not be land-applied on ground that is flooded, saturated with water, frozen, or snow-covered where the production area waste and CAFO process wastewater may enter waters of the state.
>
> (B) Production area waste and CAFO process wastewater shall not be applied to frozen or snow-covered ground unless it is subsurface injected and there

is substantial soil coverage of the applied production area waste and CAFO process wastewater, or it is surface-applied and incorporated within 24 hours.

(C) Production area waste and CAFO process wastewater may be surface-applied to frozen or snow-covered ground and not incorporated within 24 hours only if there is a field-by-field demonstration in the CNMP showing that such land application will not result in a situation where production area waste and CAFO process wastewater may enter waters of the state.

(D) Production area waste and CAFO process wastewater shall not be applied when precipitation exceeding ½ inch is forecast within 24 hours or if precipitation is forecast that may cause the production area waste and CAFO process wastewater to enter waters of the state.

(E) On ground that is not frozen or snow-covered, production area waste and CAFO process wastewater, if not subsurface-injected, shall be incorporated into the soil within 24 hours of application except on no-till fields.

\* \* \*

(*x*)(c) A prohibition on dry weather discharges from the CAFO except in accordance with 40 C.F.R. §412.31(a)(2) (2003) or 40 C.F.R. §412.46(d) (2003).

(d) Storm water discharges from land areas under the control of a CAFO where production area waste or CAFO process wastewater has been applied in compliance with field-specific nutrient management practices developed in accordance with R 323.2196(5)(a), and such discharges do not cause or contribute to a violation of water quality standards, are in compliance with this rule, provided such discharges are authorized by an NPDES permit.

(e) Unless the department determines otherwise, in cases where production area waste or CAFO process wastewater is sold, given away, or otherwise transferred to other persons (recipient) and the land application of that production area waste or CAFO process wastewater is not under the operational control of the CAFO owner or operator that generates the production area waste or CAFO process wastewater (generator), a manifest shall be used to track the transfer and use of the production area waste or CAFO process wastewater.

The rule also specifies in detail that the permit must set forth all of the things the CAFO owner or operator shall do respecting preparation of a manifest for tracking CAFO production area waste and CAFO process wastewater, and its transport to recipients including its final destination, and restricts the sale or transfer of such if recipients have improperly applied, used, or disposed of such. Mich Admin Code R 323.2196(5)(a)(*x*)(e) and (f).

The 2010 general permit and the 2015 general permit governing CAFOs set forth conditions as specified in Mich Admin Code R 323.2196(5)(a)(*ix*)(A)-(E) and permitted what the

rule permits.[6]  In the 2020 general permit, however, EGLE incorporated additional conditions, including in its prohibitions section, Part I, Section B(3)(f)(3), prohibiting application of CAFO waste during January through March unless certain conditions are met; Part I, Section B(3)(f)(4) prohibiting transfer of CAFO waste to a recipient for land application during January through March, and incorporated conditions regarding methods of application during January through March, Part I, Section B(3)(g).  The previous permits specified setback conditions prohibiting application within 100 feet of ditches that are conduits to surface waters, but permitted substitution of 35-foot vegetated buffers for such 100-foot setback areas.[7]  In the 2020 general permit, EGLE changed those provisions to prohibit application of CAFO waste within 100 feet of surface water, open tile line intake structures, sinkholes, agricultural wellheads, and roadside ditches that are conduits to surface waters.  Part I, Section B(3)(h)(1)(a).  The new conditions do not permit substitution of vegetated buffers, but mandate installation of 35-foot-wide permanent vegetated buffers along any surface water, open tile line intake structures, sinkholes, agricultural wellheads, and roadside ditches that are conduits to surface waters.  Part I, Section B(3)(h)(1)(b).

Close analysis of the new conditions indicates that they go beyond the scope of the promulgated rule, Mich Admin Code R 323.2196.  That which formerly was authorized by the promulgated rule and permitted under the 2010 and 2015 general permits is now barred by unpromulgated general permit conditions.  As such the new conditions expand the regulatory restrictions generally applicable to CAFOs that implement and apply the CWA and NREPA.  The new conditions set rigid standards with which CAFOs and CAFO waste recipients must comply. The new conditions are not merely guidelines but have the force and effect of "rules" not formally promulgated.  The record indicates that EGLE chose not to follow the applicable APA procedures to adopt a new rule or amend the existing rule pertaining to CAFO permits.  Instead, it essentially created an agency regulation, standards, and instructions of general applicability that implements or applies law enforced or administered by the agency.

The issue in this case is not whether EGLE has authority to create or amend rules with provisions like the new conditions, but whether it has and may circumvent the rule promulgation procedure and expand the scope of generally applicable regulatory standards and restrictions by requiring compliance with conditions without promulgation of them as rules.  We conclude that an affected party may challenge the validity and applicability of conditions imposed by EGLE as permit conditions as in this case when such conditions prohibit what the existing rule permits.  An interested person seeking to challenge the validity or applicability of such conditions may do so under MCL 24.264.

Under MCL 24.264, however, an "action for declaratory judgment *may not* be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously." (Emphasis added.)  The plain language of MCL 24.264 does not impose further administrative remedy exhaustion requirements. To be clear, the statute does not require persons seeking to challenge the validity or applicability

---

[6] See 2010 general permit Part I, Section A(7)(e), (f) and 2015 general permit Part I, Section B(3)(e), (f).

[7] See 2010 general permit Part I, Section A(7)(g) and 2015 general permit Part I, Section B(3)(g).

-13-

of a rule to challenge EGLE action in a contested case under MCL 24.271, by petitioning for a contested case hearing, or under MCL 24.263 by seeking a declaratory ruling as to the applicability to an actual state of facts. But the Legislature made clear that the prerequisite to commencing an action for a declaratory judgment under MCL 24.264 is a request for a declaratory ruling from the agency. The statute makes clear this must first be done or the court lacks jurisdiction to hear the case.

In this case, the record indicates that plaintiffs never first requested a declaratory ruling from EGLE. Accordingly, plaintiffs failed to meet the statutory prerequisite for filing and commencing a declaratory judgment action. Consequently, plaintiffs' action for declaratory judgment could not be commenced and the Court of Claims lacked jurisdiction, which required dismissal. The trial court concluded that it lacked jurisdiction and dismissed the case because plaintiffs had not exhausted all administrative remedies available related to their contested case. While this was factually correct and the trial court reached the correct result, the trial court's legal reasoning was erroneous. Accordingly, we affirm the trial court's dismissal of the case because it reached the right result, albeit for the wrong reason. See *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

Plaintiffs argue that a footnote in *Mich Farm Bureau*, 292 Mich App 106, makes compliance with MCL 24.264's presuit requirement unnecessary. We disagree.

In *Mich Farm Bureau*, the plaintiffs had formally requested from the DEQ[8] a declaratory ruling under MCL 24.263,[9] that an administrative rule requiring CAFOs to apply for and obtain NPDES permits did not apply to CAFOs that had not had, and did not propose to have, an actual discharge of pollutants. *Id*. at 117-118. The DEQ granted the plaintiffs' request and issued a ruling. *Id*. at 118. Later, the plaintiffs commenced an action by filing a complaint for declaratory relief in the circuit court. *Id*. at 116. In its motion for summary disposition, the DEQ contended that, rather than commencing the declaratory judgment action in circuit court, the APA required the plaintiffs to seek judicial review of the DEQ's declaratory ruling pursuant to MCL 24.263. *Id*. at 118. The circuit court determined that the plaintiffs' request to the DEQ had, in reality, been a challenge to the *validity* of the rule rather than a request for a ruling on the *applicability* of the rule

---

[8] EGLE was formerly known as the Department of Environmental Quality (DEQ).

[9] MCL 24.263 provides:

> On request of an interested person, an agency may issue a declaratory ruling as to the applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency. An agency shall prescribe by rule the form for such a request and procedure for its submission, consideration and disposition. A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by any court. An agency may not retroactively change a declaratory ruling, but nothing in this subsection prevents an agency from prospectively changing a declaratory ruling. A declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case.

to "an actual state of facts" within the meaning of MCL 24.263. *Id*. The circuit court observed that the plaintiffs' request for a declaratory ruling had raised only a question of law with no need for factual development, and that no statutory authority permitted the DEQ to make rulings or pronouncements concerning the "substantive validity" of its own rule. The circuit court concluded that the proper mechanism for challenging the substantive validity of the rule was an action for declaratory relief in the circuit court under MCL 24.264, and denied the DEQ's motion for summary disposition. *Id*. at 119.[10]

Plaintiffs in this appeal rely on the following footnote in *Mich Farm Bureau*:

We perceive no error in the circuit court's ruling on this matter. As the circuit court properly concluded, plaintiffs did not truly request "a declaratory ruling as to the applicability to an actual state of facts of a . . . rule . . . of the agency" within the meaning of MCL 24.263. Instead, and more accurately, what plaintiffs actually requested was a simple declaration that Rule 2196 was invalid. As Dean LeDuc has explained in his treatise on Michigan administrative law, MCL § 24.263 "empowers an agency to issue a declaratory ruling only as to the applicability of a rule, not as to its validity." LeDuc, Michigan Administrative Law (2001), § 8:13, p 576 (emphasis added). "The reason for this is obvious, an agency is unlikely to find its own rules invalid and those rules are presumed to be valid anyway. Courts will ultimately determine the validity of a rule." *Id*. Because plaintiffs sought to challenge the validity of Rule 2196 rather than its applicability to a particular state of facts, they were not required to ask the DEQ for a declaratory ruling under MCL § 24.263 in the first instance, and were instead entitled to directly commence this declaratory judgment action in the circuit court pursuant to MCL 24.264. Nor did the exhaustion requirement of MCL 24.264 apply to plaintiffs given that they sought to challenge the validity of Rule 2196 rather than its applicability. See LeDuc, § 8:13, p 577. "The exhaustion requirement of [MCL 24.264] (requiring resort first to the submission of a [request for a] declaratory ruling) applies only when a plaintiff wishes to challenge the applicability of a rule to an actual state of facts." *Id*. [*Id*. at 119 n 7.]

The footnote cites statements from a treatise that neither has precedential value nor reflects the primacy of Michigan law regarding statutory interpretation, which requires courts to enforce the unambiguous legislative intent as expressed in the plain language of a statute. MCL 24.264's prerequisite to commencing a declaratory judgment action cannot be ignored even if an agency is unlikely to find its own rules invalid. The footnote is dicta, and therefore, not binding precedent, because it was "unnecessary to determine the case at hand . . . ." *People v Peltola*, 489 Mich 174, 190 n 32; 803 NW2d 140 (2011). Moreover, *Mich Farm Bureau* is distinguishable from the case

---

[10] The plaintiffs thereafter moved for summary disposition, arguing in part that the administrative rule at issue, Mich Admin Code, R 323.2196, was an invalid regulation and that the promulgation of the rule exceeded the scope of the DEQ's statutory rulemaking authority under Part 31 of the NREPA and that the rule was arbitrary, capricious, and inconsistent with the intent of the Legislature. *Id*. at 120.

at bar because in that case, the plaintiff had sought a declaratory ruling under MCL 24.263, and received such a ruling from the agency before filing suit. Further, in *Mich Farm Bureau* this Court considered the *substantive* validity of a *rule* actually promulgated by the agency. *Mich Farm Bureau* and its footnote in particular is not dispositive in this case.

We hold that the Court of Claims achieved the right result albeit for the wrong reason. This case could not be commenced in the trial court because plaintiffs failed to first seek a declaratory ruling from EGLE before filing their declaratory judgment action, as required by MCL 24.264. Because this ruling is dispositive, we decline to address the other issues raised by plaintiffs on appeal. This ruling is without prejudice to plaintiffs' ability to seek a declaratory ruling from the agency under MCL 24.264.

Affirmed.

/s/ James Robert Redford
/s/ Michael F. Gadola
/s/ Deborah A. Servitto