*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETITION OF BARRY COUNTY TREASURER FOR FORECLOSURE.

---

BARRY COUNTY TREASURER,

      Petitioner-Appellant/Cross-Appellee,

v

MARY ANN MEAD,

      Respondent-Appellee/Cross-Appellant.

UNPUBLISHED
February 1, 2024

No. 360920
Barry Circuit Court
LC No. 2020-000289-CZ

---

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Petitioner, Barry County Treasurer (the Treasurer), appeals by delayed leave granted[1] the trial court's order directing it to pay respondent, Mary Ann Mead, $18,862.50 in surplus proceeds from a tax-foreclosure sale. The Treasurer argues that the trial court erred when it granted Mead's motion for disbursement of the surplus proceeds because Mead forfeited her right to recover the surplus proceeds from the tax-foreclosure sale by failing to file a timely notice as required by MCL 211.78t(2). Because this Court's published decision in *In re Petition of Muskegon Co Treasurer for Foreclosure*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 363764), establishes that the Treasurer is entitled to prevail because Mead forfeited her right to claim any proceeds, we must reverse the trial court's order and remand for entry of judgment in favor of the Treasurer.

---

[1] *In re Petition of Barry Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered October 6, 2022 (Docket No. 360920).

-1-

## I. FACTUAL BACKGROUND

In 2020, our Supreme Court ruled that former owners of properties sold at tax-foreclosure sales possess "a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties." *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 484; 952 NW2d 434 (2020). The Supreme Court further held that that right continues to exist after title passes to the foreclosing governmental unit. The government's "retention and subsequent transfer of those proceeds into the county general fund," the Court explained, "amounted to a taking of plaintiffs' properties" and the former owners are entitled to just compensation in the form of the return of the surplus proceeds. *Id*. at 484-485.

In response to the decision in *Rafaeli*, the Legislature passed 2020 PA 255 and 2020 PA 256, which were given immediate effect on December 22, 2020. With passage of 2020 PA 256, the Legislature added MCL 211.78t to the General Property Tax Act, see MCL 211.1 *et seq*. That statute includes a subsection, MCL 211.78t(2), which states that, for properties that a foreclosing governmental unit sold at a tax-foreclosure sale after July 17, 2020, a former property owner who intends to seek surplus proceeds from the tax-foreclosure sale must file a notice of intent to seek the surplus—using the form identified as Form 5743—with the foreclosing governmental unit by the July 1 after the effective date of the foreclosure. After the tax-foreclosure sale, the foreclosing governmental unit must then notify the former property owners who filed a notice of the amount of surplus proceeds, if any, by the following January 31. See MCL 211.78t(3)(i). The notice must include a statement that directs the claimant to file a motion in the circuit court in the foreclosure proceeding to recover any remaining proceeds. MCL 211.78t(3)(k).

Mead owned real property in Barry County, but she fell behind on her property taxes. The Treasurer foreclosed on her property effective March 31, 2021. The property was sold at auction on August 18, 2021, for $21,250, and the proceeds were applied to the $1,325 that Mead owed. Mead did not file Form 5743 with the Treasurer until September 2021.

In January 2022, Mead moved in the trial court for disbursement of surplus proceeds from the tax-foreclosure sale. She asked the trial court to instruct the Treasurer to pay her $19,925. The Treasurer asserted that Mead was not entitled to proceeds from the sale because she did not file the notice required under MCL 211.78t(2). Mead insisted that the Treasurer's refusal to turn over the surplus proceeds was unlawful in various respects. For example, she argued that the failure to give her the proceeds violated her right to due process and constituted an unconstitutional taking. Mead also contended that the Treasurer's notice that she could file a motion in the circuit court to recover the proceeds in effect waived the deadline stated under MCL 211.78t(2) or estopped the Treasurer from asserting that her notice of intent was untimely.[2]

On February 11, 2022, the trial court heard arguments on Mead's motion to disburse the excess proceeds and agreed with Mead. Thus, the trial court issued an order directing the Treasurer to pay Mead $18,862.50 in surplus proceeds. The Treasurer then appealed to this Court by delayed

---

[2] Mead has not properly asserted either her waiver or estoppel argument on appeal. Thus, she has abandoned those claims on appeal, so we need not address them. See *Isagholian v Transamerica Ins Corp*, 208 Mich App 9, 14; 527 NW2d 13 (1994).

leave granted. Mead cross-appealed the trial court's order to the extent that it reduced the amount owed by the 5% sales commission stated under MCL 211.78t(9).

## II. LEGAL ANALYSIS

The Treasurer contends that the trial court erred when it determined that Mead was entitled to the surplus even though she did not comply with the requirements prescribed by MCL 211.78t. This Court reviews de novo whether the trial court properly interpreted and applied MCL 211.78t. See *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). When interpreting a statute, this Court's charge is to give effect to the intent of the Legislature, and the words actually used by the Legislature in the statute are the most reliable evidence of its intent. See *US Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009). In MCL 211.78t(11), the Legislature stated that MCL 211.78t serves as the "exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under the laws of this state."

Mead argues that, notwithstanding MCL 211.78t(11), the Legislature drafted MCL 211.78t to be permissive. More specifically, she maintains that the Legislature provided that MCL 211.78t should apply only to property owners who elect to use its provisions. This Court has flatly rejected that argument, explaining that "our Legislature intended MCL 211.78t as the sole mechanism by which a former owner of foreclosed property could obtain any proceeds remaining from the tax-foreclosure sale and satisfaction of the owner's delinquent taxes and associated costs." *Muskegon Co*, ___ Mich App at ___; slip op at 4.

Mead suggests that MCL 211.78t fails to adequately codify the holding in *Rafaeli* because it refers to "remaining proceeds," whereas our Supreme Court referred to "surplus proceeds." She implies that this difference in terminology suggests the existence of alternate means for recovering the proceeds. Under MCL 211.78*l*(1), owners of extinguished recorded or unrecorded interests in property sold or transferred at tax-foreclosure sales may recover the property or their interests in the property. The statute provides, in relevant part, that "[a]n action to recover any proceeds from the sale or transfer of property foreclosed for nonpayment of real property taxes under this act must be brought as provided under section 78t." " 'Any proceeds' is sufficiently broad to suggest that the Legislature intended to include proceeds of any kind in this category," *Muskegon Co*, ___ Mich App at ___; slip op at 4, so the Legislature's statement that "an action" to recover the proceeds remaining from a tax-foreclosure sale after the satisfaction of the foreclosed owner's tax debt must be brought under MCL 211.78t leaves no room for alternate means by which foreclosed property owners may recover excess proceeds. See *id*. at ___; slip op at 5.

Mead next asserts that a property right cannot be extinguished before it arises, which, she insists, did not happen until after the tax-foreclosure sale of her property generated a surplus. Our Supreme Court has recognized that the right to surplus proceeds after a tax-foreclosure sale flows from ownership of the property that was seized to pay a public debt. The Court explained that the state traditionally could not collect more than what was owed, so it had an obligation to return the excess. See *Rafaeli*, 505 Mich at 463-468. Although the right to surplus proceeds does not vest until after the sale, the right nevertheless exists as a distinct right before the sale of the property to satisfy the tax debt. *Id*. at 475-476. Put another way, a property owner's right to any surplus exists before the tax-foreclosure sale, even though it is not compensable until after that sale generates the

surplus. See *id*. at 476-477. Accordingly, Mead had a "right to collect surplus proceeds[,]" which "existed before the tax-foreclosure sale[,]" *Muskegon Co*, ___ Mich App at ___; slip op at 9, but she forfeited that right by failing to comply with the statutory notice requirement.

Mead further insists that this Court must affirm because if MCL 211.78t(2) bars recovery, then it contravenes substantive due process. "Both the Fourteenth Amendment to the United States Constitution and Const 1963, art 1, § 17 guarantee that no state shall deprive any person of life, liberty or property, without due process of law." *Cummins v Robinson Twp*, 283 Mich App 677, 700; 770 NW2d 421 (2009) (quotation marks and citation omitted). The right to due process of law has a substantive component and a procedural component. *Cary Investments, LLC v Mount Pleasant*, 342 Mich App 304, 314; 994 NW2d 802 (2022). The substantive component bars certain governmental actions regardless of the fairness of the procedures used to implement them. See *Bonner v Brighton*, 495 Mich 209, 225-226; 848 NW2d 380 (2014). The procedural component "requires 'notice and an opportunity to be heard' prior to a deprivation of life, liberty, or property." *Cary Investments*, 342 Mich App at 315.

This Court has expressly rejected all the due-process arguments Mead has advanced. See *Muskegon Co*, ___ Mich App at ___; slip op at 7-9. First, this Court refused to accept the framing of the claim to surplus proceeds as a violation of substantive due process. Instead, this Court ruled that when " 'a constitutional claim is covered by a specific constitutional provision' " such as the Takings Clause, then " 'the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' " *Id*. at ___; slip op at 9. Second, in responding to the argument that the Treasurer's failure to give Mead adequate notice violated her right to procedural due process, this Court concluded that a treasurer's "notices were not rendered inadequate by the fact that they were sent to [the claimants] before the tax foreclosure sale—if anything, the earlier notice was an even greater safeguard of [the claimants'] rights than the post-sale notice that they advocate for now." *Id*. Third, this Court held that "[t]he statutory scheme set up by our Legislature and followed by [a treasurer] satisfies due process." *Id*. at ___; slip op at 8. Therefore, Mead has no viable due-process argument left after our decision in *Muskegon Co*.

Finally, Mead claims she is entitled to the return of the surplus proceeds to prevent a taking in violation of Michigan Const 1963, art 10, § 2. In *Muskegon Co*, ___ Mich App at ___; slip op at 9-11, this Court explained in detail why a Takings Clause challenge to the Treasurer's actions necessarily fails. We are bound by that decision, so we must reverse the trial court's February 24, 2022 order granting Mead's motion to disburse surplus proceeds and remand the case for entry of judgment in favor of the Treasurer.[3]

Reversed and remanded for entry of judgment in favor of the Treasurer. We do not retain jurisdiction. There being an important question of public policy, the Treasurer may not tax costs. See MCR 7.219(A).

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates

---

[3] Given our resolution of this claim of error, we need not address Mead's cross-appeal.