*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FRANKENMUTH MUTUAL INSURANCE
COMPANY,

UNPUBLISHED
August 10, 2023

Plaintiff-Appellee,

v

No. 362955
Oakland Circuit Court
LC No. 2021-191239-NF

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

Defendant-Appellant.

Before: BOONSTRA, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

In this insurance priority dispute, defendant appeals by right the trial court's order granting plaintiff's motion for summary disposition and denying defendant's motion for summary disposition. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from a single-vehicle accident in which Wendy Edenburn (Wendy) was driving a vehicle owned by her father, Russell Edenburn (Russell). Russell's vehicle was insured by plaintiff. At the time of the accident, Wendy did not have an automobile insurance policy in her name.

On the date of the accident, Wendy was living in a camper on Russell's property; she had been living there for approximately one month. Russell and his wife lived in a house located on the property. Wendy's adult daughter lived next door to Russell's property, in a house that Wendy owned outright (Wendy's house).

Wendy submitted a claim to plaintiff for personal injury protection (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*. Plaintiff initially paid PIP benefits under the belief that Wendy was a relative domiciled with Russell on the date of the accident, but on further investigation concluded that this determination had been made in error. Plaintiff filed a complaint against defendant for declaratory relief and subrogation, arguing that under MCL 500.3114, it

-1-

(plaintiff) was not in the order of priority to provide PIP benefits to Wendy, and that her claim should instead be assigned under the Michigan Assigned Claims Plan (MACP).

At her deposition, Wendy testified that the camper was located 20 feet away from Russell's house and had its own heat, electricity, running water, and cable television. She did not make any rent, tax, mortgage, or utility payments to Russell for her residence in the camper. Wendy also stated that the camper did not have its own mailbox, that she received mail and packages at her own house while she lived in the camper, and that she showered and stored food and clothes at Russell's house during that time. Wendy stated that she would go to Russell's house every day to use the bathroom facilities, eat, or just visit with her father. She also explained that she owned a home separate apart from the camper, but that she had moved out of that house because (a) it had been "taken over" by her daughter, her daughter's significant other, and her daughter's three children, (b) there was not enough space for all of them, and (c) Wendy and her daughter had a hard time getting along. A lot of Wendy's possessions remained at Wendy's house for her daughter's family to use; Wendy also stored some possessions in a garage owned by Russell at a separate address than his home. Wendy owned a small dog who slept with her, but the dog spent a lot of time at Wendy's house as well, sometimes staying there while Wendy worked. The dog was not allowed in Russell's house. Wendy stated that she had moved into the camper planning to live there for only a short time before moving into a cabin owned by Russell at a separate address.

At the time of her deposition, over 18 months after the accident, Wendy was living in the referenced cabin. Wendy testified that she had lived at the cabin for over a year, and that she intended to move back into her own home after her daughter's family moved out, which they had plans to do.

At his deposition, Russell confirmed Wendy's testimony about the utilities to the camper and that he did not charge her rent. Russell also confirmed that Wendy received mail and packages only at Wendy's own house, and that Wendy used his house to shower, cook, and store food and possessions. Russell testified that Wendy could come and go from his house as she pleased and that she would visit there most days. Wendy could have visitors without Russell's permission. Russell also stated that Wendy had been living in the camper temporarily while they worked on preparing the cabin.

The parties filed competing motions for summary disposition on the issues of Wendy's domicile and insurer priority. Plaintiff argued that, because Wendy was not a named insured under any policy with plaintiff, and because she was not domiciled in Russell's household at the time of the accident, plaintiff was not responsible for Wendy's PIP benefits. Defendant argued that Wendy was domiciled in Russell's household at the time of the accident, that plaintiff was the highest priority insurer for payment of Wendy's PIP benefits, and that Wendy therefore was ineligible to receive benefits from defendant.

The trial court dispensed with oral argument on the competing motions, and in July 2022 issued an opinion and order granting plaintiff's motion and denying defendant's motion. The trial court found that the factors for analyzing domicile set forth in *Workman v Detroit Auto Inter-Insurance Exchange*, 404 Mich 477; 274 NW2d 373 (1979) and *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675; 333 NW2d 322 (1983) were "the controlling relevant factors that must

be used to resolve the domicile dispute in this matter." Specifically, the trial court found the following factors to be relevant:

> (1) [T]he subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [*Workman*, 404 Mich at 496-497 (citations omitted).]

> (1) [T]he person's mailing address; (2) whether the person maintains possessions at the insured's home; (3) whether the insured's address appears on the person's driver's license and other documents; (4) whether a bedroom is maintained for the person at the insured's home; and (5) whether the person is dependent upon the insured for financial support or assistance. [*Williams v State Farm Mut Auto Ins Co*, 202 Mich App 491, 494-495; 509 NW2d 821 (1993), citing *Dairyland Ins Co*, 123 Mich App at 682.]

> Considering the first *Workman* factor, the trial court found:
> This factor weighs in favor of plaintiff. The record reflects that Wendy's declared intent was to live in the camper temporarily and move either back into her home . . . or move elsewhere. There is no documentary support for the notion that Wendy subjectively or outrightly considered the camper to be a residence of any sort of permanency. It was clearly a temporary living space.

> Considering the fourth *Dairyland* factor, the trial court found:
> This factor weighs in favor of Plaintiff because Wendy owned her own home, therefore she owned every room in her home and no evidence has been presented that she was a landlord or that she was denied access to any room in her home. Wendy also testified that she kept many of her belongings in her home but that her daughter and family could use them.

The trial court found that the second *Workman* factor also weighed in favor of plaintiff because the relationships between Wendy and Russell, and Wendy and her daughter, were familial and the living arrangements lacked any written agreements or rental payments. Additionally, the trial court found that the fourth *Workman* factor, and first (though it was of limited importance because of the proximity of all the residences) and third *Dairyland* factors favored plaintiff, while the third *Workman* factor favored defendant. The trial court found that the second and fifth *Dairyland* factors were neutral. On the basis of this analysis, the trial court concluded that Wendy's domicile was her own home. It therefore granted summary disposition in favor of plaintiff. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004); *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When moving under MCR 2.116(C)(10), the moving party has the initial burden to identify "the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4); see also *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8-9; 890 NW2d 344 (2016). If the moving party properly asserts and supports their motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists," without relying on mere allegations or denials in their pleadings. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003); see also *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In considering a motion for summary disposition, the court need only consider the evidence identified by the parties. See *Barnard Mfg Co v Gates Performance Engineering, Inc*, 285 Mich App 362, 377; 775 NW2d 618 (2009). The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party, MCR 2.116(G)(5); *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and must draw all reasonable inferences in favor of the nonmoving party, *Dextrom v Wexford County*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010). The trial court may not make findings of fact or weigh credibility in deciding a motion for summary disposition, *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018), and is limited to the evidence presented to the trial court at the time the motion was decided, *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009).

We review de novo issues of statutory interpretation. *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 296; 876 NW2d 853 (2015); *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016).

## III. ANALYSIS

Defendant argues that the trial court erred by concluding as a matter of law that Wendy was not domiciled with Russell on the date of the accident and, accordingly, granting summary disposition in favor of plaintiff. We disagree.

MCL 500.3172(1) states:
(1) A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in

-4-

this state may claim personal protection insurance benefits through the assigned claims plan if any of the following apply:

(a) No personal protection insurance is applicable to the injury.

(b) No personal protection insurance applicable to the injury can be identified.

(c) No personal protection insurance applicable to the injury can be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss.

(d) The only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed. [MCL 500.3172(1).]

MCL 500.3114 addresses priority among insurers for the payment of benefits and states in pertinent part:

(1) [A] personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. . . .

\* \* \*

(4) [A] person who suffers accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle who is not covered under a personal protection insurance policy as provided in subsection (1) shall claim personal protection insurance benefits under the assigned claims plan under sections 3171 to 3175. . . . [MCL 500.3114(1),(4).]

Our Supreme Court has found that the Legislature's choice "to use the more restrictive term, 'domiciled,' " rather than the term "resided," is evidence of an intention to "limit[] the universe of insurers that are potentially liable under MCL 500.3114(1)." *Grange Ins Co of Michigan v Lawrence*, 494 Mich 475, 495-496; 835 NW2d 363 (2013). "The Legislature thus affirmatively chose a term that it knew had a particular meaning, and we must accord this legislative choice its full weight when determining the Legislature's intent." *Id*. at 496.

"The term 'domicile' . . . has a precise, technical meaning in Michigan's common law, and thus must be understood according to that particular meaning." *Id*. at 493. This definition encompasses both: (1) "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning," and (2) "that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." *Id*. (quotation marks and citations omitted). At all times, every person has one, and only one, domicile. *Id*. at 493-494. Therefore, "the acquisition of a new domicile does, at the same instant, terminate the preceding one." *Id*. at 494. Further, "domicile is

acquired by the combination of residence and the intention to reside in a given place . . . . The traditional common-law inquiry into a person's 'domicile,' then, is generally a question of intent, but also considers all the facts and circumstances taken together." *Id.* at 495 (quotation marks and citations omitted).

Our Supreme Court in *Workman* identified several factors to be considered by a trial court, if relevant, when determining a person's domicile:

> (1) [T]he subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [*Workman*, 404 Mich at 496-497 (citations omitted).]

In addition, this Court has set forth several additional factors to be considered if relevant to the trial court's determination regarding a person's domicile:

> (1) [T]he person's mailing address; (2) whether the person maintains possessions at the insured's home; (3) whether the insured's address appears on the person's driver's license and other documents; (4) whether a bedroom is maintained for the person at the insured's home; and (5) whether the person is dependent upon the insured for financial support or assistance. [*Williams*, 202 Mich App at 494-495, citing *Dairyland*, 123 Mich App at 682.]

In applying these multifactor tests, our Supreme Court has stated: "[N]o one factor is, in itself, determinative; instead, each factor must be balanced and weighed with the others." *Workman*, 404 Mich at 496.

The trial court correctly held that the first *Workman* factor, "the subjective or declared intent of [Wendy] of remaining, either permanently or for an indefinite or unlimited length of time," in Russell's household, favored plaintiff. *Workman*, 404 Mich at 496. Again, a common-law domicile is "that place where a person has voluntarily fixed his abode *not for a mere special or temporary purpose*, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." *Grange Ins Co*, 494 Mich at 493 (emphasis added). Therefore, a domicile is *not* established when someone changes residences for a temporary purpose. Both Wendy and Russell testified that Wendy's residence in the camper was for the temporary purpose of removing her from her own home (where her daughter and her daughter's family were residing) while she arranged for a permanent abode either at the cabin, which was on a separate property from Russell's home, or elsewhere. This unrefuted evidence that Wendy's stay at the camper was temporary differentiates this case from *Workman*, 404 Mich at 497-498, in which the claimant "testified that she and her husband were not looking for any other place to live and that she considered the trailer as her home," and had no intention to move to any other lodging.

The first *Workman* factor was essentially dispositive of this case. The evidence shows that Wendy only intended to reside in the camper temporarily until she could move into a new home; further, that is exactly what occurred. Moreover, Wendy did not intend to reside in the camper for an indefinite or unlimited length of time, but only until the cabin was habitable. *Grange Ins Co*, 494 Mich at 493. Without any evidence that Wendy intended to make the camper her new domicile, the trial court correctly determined that her previous domicile had not been terminated, notwithstanding that Wendy did not intend to return to it until her daughter's family had moved out. *Id*. at 494.

However, we do disagree with the trial court's analysis of the second *Workman* factor, "the formality or informality of the relationship between the person and the members of the household," *Workman*, 404 Mich at 496. Although the trial court correctly found that the relationship between Wendy and Russell was informal, the trial court concluded that this factor favored plaintiff, because Wendy was not bound by a lease and could leave the camper any time she wanted. However, this type of "informal and friendly" relationship was found by our Supreme Court in *Workman* to support a finding that the plaintiff was domiciled with her relative. *Workman*, 404 Mich at 497-498. Therefore, the trial court should have found that this factor favored defendant.

Regarding the third *Workman* factor, a person living in a structure such as a trailer or camper on a relative's property can be found to be domiciled with that relative. *Williams*, 202 Mich App at 495, citing *Workman*, 404 Mich at 496-497. There was no dispute that the camper Wendy lived in at the time of the accident was on Russell's property and was "within the same curtilage or upon the same premises," as Russell. *Workman*, 404 Mich at 496. The trial court therefore correctly found that the third *Workman* factor favored defendant.

The trial court also correctly found that the fourth *Workman* factor, "the existence of another place of lodging," *id*. at 497, favored plaintiff because Wendy still owned the house she had lived in for many years before moving to the camper. Relatedly, the trial court also correctly held the first and third *Dairyland* factors, the claimant's address used for mail and documents, *Williams*, 202 Mich App at 494-495, citing *Dairyland Ins Co*, 123 Mich App at 682, favored plaintiff, as it was undisputed that Wendy did not receive mail or packages at the camper.

The trial court also correctly held that the second *Dairyland* factor, concerning where Wendy kept her possessions, *Williams*, 202 Mich App at 494-495, citing *Dairyland Ins Co*, 123 Mich App at 682, was neutral. Wendy and Russell testified that at the time of the accident Wendy kept possessions in the camper, in Russell's home, in Russell's storage garage at a separate address, and in her own home (where her daughter was residing).

However, we disagree with the trial court's analysis regarding the fourth *Dairyland* factor, although we agree with the court's ultimate conclusion. Regarding the fourth factor, "whether a bedroom is maintained for the person at the insured's home," *Williams*, 202 Mich App at 495, the trial court stated that this factor favored plaintiff "because Wendy owned her own home, therefore she owned every room in her home and no evidence has been presented that she was a landlord or that she was denied access to any room in her room [sic]." However, this *Dairyland* factor explicitly inquires whether a bedroom is maintained *at the insured's home*, i.e., at Russell's home, not Wendy's home that was then occupied by her daughter and her family. But in any event, Russell testified that Wendy did not have a room maintained for her in his home, and there was no

evidence presented that the camper had been "maintained" for Wendy's use. To the extent that this factor was relevant, it favored plaintiff, and the trial court's error in analysis was harmless. *Dariyland*, 123 Mich app at 684.

Regarding the fifth *Dairyland* factor, "whether the person is dependent upon the insured for financial support or assistance," *Williams*, 202 Mich App at 495, citing *Dairyland Ins Co*, 123 Mich App at 682, we disagree that this factor was neutral. Although Wendy was living in Russell's camper rent-free, and Russell was providing Wendy with utilities and allowing her to use laundry, kitchen, and bathroom facilities in his house without financial contribution to his household, this factor asks a court to assess whether Wendy was "*dependent* upon [Russell] for financial support or assistance." There is no evidence that Wendy, as a full-time nurse making almost $30 an hour, could not have paid rent or utilities, or found another place to live if the camper became unavailable. Therefore, the fifth *Dairyland* factor favored plaintiff.

While a domicile determination is generally a question of fact, when the underlying facts are not in dispute, the determination of domicile is a question of law. *Grange Ins*, 494 Mich at 490. Although our analysis of the relevant domicile factors differs from the trial court's, we agree that there was no genuine issue of material fact regarding whether Wendy was domiciled with Russell at the time of her accident. The trial court correctly held that she was not, and she therefore did not qualify as a resident relative for the purpose of obtaining benefits from plaintiff.

Affirmed.


/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Kathleen A. Feeney