*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ISLAH COLE,

        Plaintiff-Appellee,

v

HAILEE MCFARLIN, SHELLEE ANN DAVISON,
and JACOB TOOTLA,

        Defendants,

and

ALLSTATE INSURANCE COMPANY,

        Defendant-Appellant,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY and JOHN DOE
INSURANCE COMPANY,

        Defendants-Appellees.

UNPUBLISHED
January 4, 2024

No. 362804
Oakland Circuit Court
LC No. 2020-183268-NI

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

        In this no-fault insurance priority dispute, defendant Allstate Insurance Company (Allstate) appeals by leave granted[1] an order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) to defendant, the Michigan Automobile Insurance Placement

---

[1] *Cole v Seifert*, unpublished order of the Court of Appeals, entered February 8, 2023 (Docket No. 362804).

Facility (MAIPF). On appeal, Allstate contends the trial court erred in granting summary disposition because a question of fact remains whether plaintiff was domiciled with her parents at the time of the crash, qualifying plaintiff for coverage under her parents' insurance policy with Allstate. Allstate also argues the trial court erred in denying reconsideration of its grant of summary disposition. We reverse and remand.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises out of an August 27, 2019 motor vehicle accident. Plaintiff was driving her 2016 Ford Fusion when she was rear-ended. The police report gives plaintiff's address as "44189 Bayview Avenue, Apt 41312, Clinton Township MI 48038." The Fusion was insured through a policy with Allstate. Plaintiff's parents were the "named insureds" on the policy, while plaintiff and her parents were included as "listed drivers." The policy gives the address of plaintiff's parents as "19658 Woodside St, Harper Woods MI 49068."

Plaintiff filed her initial complaint on September 2, 2020, against defendants Hailee McFarlin Seifert, Shellee Ann Davison, and Allstate. In addition to claims against the driver and owner of another vehicle involved in the accident, plaintiff claimed no-fault benefits under the no-fault act, MCL 500.3101 *et seq.*,[2] against Allstate.

At her deposition plaintiff testified she and her son had lived with her parents since 2016. Plaintiff stated the address on her driver's license was the Bayview address given in the police report, and it corresponded to an apartment belonging to her friend, Shanell Pippin, where plaintiff visited overnight frequently. Plaintiff explained:

> *Q*. Why do you have the Bayview address on your driver's license?
>
> *A*. Because, long—well, it's not really a long story. My parents are parents and so some things that I—there's things that they're private to me that I don't need them to know and so that's the whole reason why I even switched the address, because my parents are definitely always kind of like, I don't know a good way to put it, but in my business. And so for my own privacy, I did that.

Plaintiff stated she was not on the lease of the apartment and did not make any financial contribution to that residence, however she used that address in filing her taxes and with her employer, and received mail at the Bayview location. The electricity bill for the Bayview location was also in plaintiff's name. Plaintiff estimated that in the year before the accident she spent "four, sometimes five" nights a week at her parents' home, but the allocation of her time between the residences varied. She also testified that before the accident she had extensive chore responsibilities at both residences.

---

[2] The no-fault act was substantially amended by 2019 PA 21, effective June 11, 2019. The amended version of the act applies in this case because the accident occurred after the amendments took effect.

Allstate moved for summary disposition, arguing it was not in the order of priority to provide coverage for plaintiff because she was not domiciled with her parents, the policyholders at the time of the accident, but instead was domiciled at the Bayview address. The trial court found in that case that a question of material fact regarding plaintiff's residency remained and denied the motion.

Meanwhile on May 26, 2021, plaintiff filed this action naming the MAIPF as a defendant. Plaintiff claimed she was entitled to an assignment of her no-fault claim by the MAIPF. On the same date, plaintiff applied for personal insurance protection (PIP) benefits under the Michigan Assigned Claims Plan (MACP) through the MAIPF. Plaintiff's action against the MAIPF was originally assigned to a different judge, but the trial court granted a motion to consolidate the cases.

The MAIPF moved for summary disposition under 2.116(C)(10), arguing plaintiff was not entitled to benefits through the MACP because plaintiff was covered by the policy with Allstate. The MAIPF also argued plaintiff failed to provide notice of her claim to the MAIPF within the required one year, disqualifying her for coverage under the MACP. Plaintiff responded, agreeing Allstate was the insurer of priority and requesting, should the trial court grant the MAIPF's motion, it do so on that basis. Allstate responded, arguing plaintiff was not entitled to benefits under its policy because she was not domiciled with her parents, and she properly filed a claim with the MAIPF.

The trial court granted the MAIPF summary disposition, dismissing plaintiff's claims against the MAIPF without prejudice. The trial court stated, "Allstate Insurance Company is the highest in order of priority for payment of Plaintiff's no-fault PIP claims."

Allstate moved for reconsideration, arguing because the facts regarding plaintiff's domicile were in dispute, summary disposition was inappropriate. Allstate also argued the trial court committed palpable error by finding no question of material fact existed regarding plaintiff's domicile when the trial court, in its previous ruling on Allstate's motion for summary disposition, found a question remained. The trial court denied reconsideration and this appeal followed.

## II. STANDARD OF REVIEW

We review summary disposition rulings de novo. *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004). This Court reviews a motion for summary disposition on appeal in the same way the trial court was obligated to review it. See *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012).

Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). Under MCR 2.116(C)(10) the moving party has the initial burden to identify "the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4); see also *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8-9; 890 NW2d 344 (2016). If the moving party properly asserts and supports its motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists," and they cannot do this by relying on mere allegations or denials in their pleadings. *Quinto v Cross & Peters Co*, 451 Mich

358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003); see also *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party, MCR 2.116(G)(5); *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and must draw all reasonable inferences in favor of the nonmoving party, *Dextrom v Wexford County*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010).

The question of the availability of insurance under a statute is a question of statutory interpretation. *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 296; 876 NW2d 853 (2015). We review de novo whether the trial court properly interpreted relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). "The role of [the] Court in interpreting statutory language is to ascertain the legislative intent that may be reasonably inferred from the words of the statute." *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019) (quotation marks and citations omitted). "Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning." *Driver v Naini*, 490 Mich 239, 247; 802 NW2d 311 (2011). "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written." *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 410; 987 NW2d 501 (2022).

## III. ANALYSIS

The trial court erred in granting the MAIPF summary disposition because a question of fact exists regarding plaintiff's domicile at the time of the accident.

MCL 500.3172(1) sets forth eligibility for the MACP:

A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may claim personal protection insurance benefits through the assigned claims plan if any of the following apply:

(a) No personal protection insurance is applicable to the injury.

(b) No personal protection insurance applicable to the injury can be identified.

(c) No personal protection insurance applicable to the injury can be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss.

(d) The only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed. [MCL 500.3172(1).]

In the determination whether PIP coverage is available, "MCL 500.3114 instructs a person to pursue his or her 'claim' for PIP benefits from insurers according to the listed order of priority." *Griffin v Trumbull Ins Co*, 509 Mich 484, 498; 983 NW2d 760 (2022). MCL 500.3114, in pertinent part, states:

(1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. A personal injury insurance policy described in section 3103(2) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motorcycle accident. If personal protection insurance benefits or personal injury benefits described in section 3103(2) are payable to or for the benefit of an injured person under his or her own policy and would also be payable under the policy of his or her spouse, relative, or relative's spouse, the injured person's insurer shall pay all of the benefits up to the coverage level applicable under section 3107c to the injured person's policy, and is not entitled to recoupment from the other insurer.

\* \* \*

(4) Except as provided in subsections (2) and (3), a person who suffers accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle who is not covered under a personal protection insurance policy as provided in subsection (1) shall claim personal protection insurance benefits under the assigned claims plan under sections 3171 to 3175. This subsection does not apply to a person insured under a policy for which the person named in the policy has elected to not maintain coverage for personal protection insurance benefits under section 3107d or as to which an exclusion under section 3109(2) applies, or who is not entitled to be paid personal protection benefits under section 3107d(6)(c) or 3109a(2)(d)(*ii*). [MCL 500.3114(1), (4).]

With regard to MCL 500.3114, this Court has found: "The phrase 'the person named in the policy' is synonymous with the term 'the named insured,' " *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 255; 819 NW2d 68 (2012), and "persons designated merely as drivers under a policy . . . are neither named insureds nor persons named in the policy," *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 175; 858 NW2d 765 (2014) (quotation marks and citation omitted). Our Supreme Court has found MCL 500.3114(1) "establishes a general rule that a person who sustains an accidental bodily injury in a motor vehicle accident must look first to no-fault insurance policies in his or her own household for no-fault benefits before looking to other insurers for benefits." *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 515; 968 NW2d 482 (2021).

Our Supreme Court has also found the Legislature's choice "to use the more restrictive term, 'domiciled,' " rather than the term "resided," is evidence of an intention to "limit[] the universe of insurers that are potentially liable under MCL 500.3114(1)." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 495-496; 835 NW2d 363 (2013). "The Legislature thus affirmatively chose a term that it knew had a particular meaning, and we must accord this legislative choice its full weight when determining the Legislature's intent." *Id*. at 496.

While the term "domicile" is not defined in the no-fault act, it "has a precise, technical meaning in Michigan's common law, and thus must be understood according to that particular meaning." *Grange Ins Co of Mich*, 494 Mich at 492-493. This definition encompasses: (1) "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning," and (2) "that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." *Id*. (quotation marks and citations omitted). At all times, every person must have a domicile, and no person can have more than one domicile. *Id*. at 493-494. It follows, "the acquisition of a new domicile does, at the same instant, terminate the preceding one." *Id*. at 494. Our Supreme Court has stated:

> [D]omicile is acquired by the combination of residence and the intention to reside in a given place . . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile. The traditional common-law inquiry into a person's "domicile," then, is generally a question of intent, but also considers all the facts and circumstances taken together. [*Id*. at 495 (quotation marks and citations omitted).]

Importantly, "[a] domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court." *Id*. at 489-490.

In the consideration of "all the facts and circumstances," caselaw has identified potentially relevant factors courts should evaluate when addressing a question of domicile. These include the factors laid out by our Supreme Court in *Workman v Detroit Auto Inter-Insurance Exchange*, 404 Mich 477; 274 NW2d 373 (1979), specifically:

> (1) [T]he subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [*Id*. at 496-497 (citations omitted).]

Additional factors identified by this Court in *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675; 333 NW2d 322 (1983), and affirmed in *Williams v State Farm Mut Auto Ins Co*, 202 Mich App 491; 509 NW2d 821 (1993) are as follows:

(1) [T]he person's mailing address; (2) whether the person maintains possessions at the insured's home; (3) whether the insured's address appears on the person's driver's license and other documents; (4) whether a bedroom is maintained for the person at the insured's home; and (5) whether the person is dependent upon the insured for financial support or assistance. [*Williams*, 202 Mich App at 494-495, citing *Dairyland*, 123 Mich App at 682.]

As noted by our Supreme Court, the use of such factors as a tool to assess "domicile" is not contrary to interpreting the word, as used in MCL 500.3114(1), as having its common-law meaning.

. . . *Workman* adopts a multifactor domicile test that is analytically the same as the traditional domicile test employed for more than a century at common law. Stated otherwise, *Workman* is entirely consistent with our conclusion that the term "domicile" is to be interpreted the same as its common-law meaning. [*Grange Ins Co of Mich*, 494 Mich at 499-500.]

See also *Corbin v Meemic Ins Co,* 340 Mich App 140, 153-154; 985 NW2d 217 (2022).

In applying the multifactor tests, our Supreme Court has stated: "[N]o one factor is, in itself, determinative; instead, each factor must be balanced and weighed with the others." *Workman*, 404 Mich at 496. The determination of domicile for the purposes of the no-fault act must be made "only within the context of the numerous factual settings possible." *Id*. (quotation marks and citations omitted).

The key in addressing this issue is that a designation of a common-law "domicile" indicates something other than what one might answer when asked, as plaintiff was during her deposition, "what is your current address?" The MAIPF's argument Allstate is the insurer of priority rests on the fact plaintiff answered this question with her parents' address and stated she "live[d] with [her] parents." However, "[D]omicile is acquired by the combination of residence and the intention to reside in a given place . . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile." *Grange Ins Co of Mich*, 494 Mich at 495 (quotation marks and citations omitted). Residence, or what address plaintiff gave on a particular occasion when asked "what is your current address," provides no direct evidence of the second element of domicile, which is an intention to remain in a given place. In fact, the deposition testimony MAIPF primarily relies upon includes no questioning concerning plaintiff's intent to remain at either location.

Plaintiff gave the Bayview address as her residence multiple times in the approximately 14 months before the accident. She did so in renewing her driver's license, in a benefit election form a month before the accident, in court proceedings in 2019, during the purchase of her vehicle in 2018, in income tax filings in 2018, and in the immediate aftermath of the accident giving rise to this litigation. Further, in her answers to interrogatories, plaintiff listed the Bayview address and her parents' address as "home (residence) addresses for the preceding ten (10) years," without specifying for what time periods she designated either as her home. Without direct evidence to support plaintiff's intention to remain at either residence, there exists a question of fact regarding where she was domiciled at the time of the accident.

"The traditional common-law inquiry into a person's 'domicile[]' . . . is generally a question of intent, but also considers all the facts and circumstances taken together." *Id.* (quotation marks and citations omitted). Though the trial court cited as its reasons for granting summary disposition as "Ms. Cole's testimony as to where she lived," and "an explanation as to why she directed some things to a different address," this assessment fails to consider "all the facts and circumstances." Such an assessment would address potentially relevant factors provided by caselaw. For instance, the first *Workman* factor, "the subjective or declared intent of the person of remaining . . . in the place he contends is his 'domicile' or 'household,' " *Workman*, 404 Mich at 496, is almost devoid of evidence because plaintiff only stated she currently lived with her parents stating nothing about her intention to remain. This is in contrast with the testimonial evidence in *Workman*, "it was [the claimant's] intention to . . . remain living [at the residence] 'for an indefinite period of time' " and that the claimant and her family "were not looking for any other place to live." *Id.* at 497.

Turning to the *Dairyland* factors, plaintiff testified not only that she received mail at the Bayview address but purposely diverted mail from her parents' home. *Williams*, 202 Mich App at 494. She also testified she "probably" had belongings at the Bayview residence. *Id.* While plaintiff testified she did not have a bedroom at the Bayview address at the time of the accident (despite the fact she spent multiple overnights there per week), the Bayview address was on plaintiff's driver's license and was used for tax and employment purposes at the time of the accident. *Id.* at 494-495.

Additional relevant considerations should have included plaintiff's use of the Bayview address for privacy purposes, while using her parents' home as "somewhere to be safe for me and my child" after her divorce, the possibility a utility account for the Bayview address was in plaintiff's name at the time of the accident, and plaintiff's regular performance of chores at both residences before the accident.[3] All of these facts are supported by plaintiff's testimony.

---

[3] Not only did plaintiff testify she took care of most of the housework at her parents' house before the accident to help out her "older" parents, she stated when she was at the Bayview address she performed "cleaning, cooking if I'm cooking, washing and everything, all of the chores if I'm there," "[p]robably two or three times [a week] if I'm over there."

## IV. CONCLUSION

Allstate established a genuine issue of material fact concerning plaintiff's domicile at the time of the accident. The trial court therefore erred in granting defendant MAIPF summary disposition on the basis of plaintiff's domicile being with her parents. Additionally, the trial court did not address the MAIPF's alternative grounds for affirmance concerning its assertion of a privilege to deny plaintiff's claim due to her failure to provide notice within one year of the accident. We decline to address this issue for the first time on appeal and direct the trial court to address it in the first instance. Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola